[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 26, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11294

_____

D. C. Docket No. 04-00023-CV-JEC-3

WILLIAM DAVID MORRISON,
KIM L. MORRISON,

Plaintiffs-Appellants,

versus

BOB B. MANN, JR., M.D.,
LISA KAY DOUTHITT PARSONS, R.N.,
PAPP CLINIC, P.C.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(March 26, 2008)**

Before BIRCH and FAY, Circuit Judges, and RODGERS[*], District Judge.

PER CURIAM:

Plaintiff-appellants William David Morrison ("Dave") and Kim Morrison ("Kim) (jointly, the "Morrisons") appeal the district court's judgment entered following a jury verdict for the Morrisons in their medical malpractice action. The Morrisons also appeal numerous evidentiary rulings and the district court's orders granting partial summary judgment to defendant-appellee Lisa Kay Douthitt Parsons, R.N. ("Parsons") on the Morrisons's claim for punitive damages, directing a verdict for defendants-appellees Bob B. Mann, Jr., M.D. ("Mann") and PAPP Clinic, P.C., (the "Clinic") on the Morrisons's claims of breach of contract and for related attorney's fees, and denying the Morrisons's requests for sanctions.[1] We DISMISS the Morrisons's appeal of the jury verdict, and AFFIRM the district court's underlying rulings.

## I. BACKGROUND

Dave was injured during an examination at the Clinic which was conducted by Parsons, under the direction of Mann. During the examination, Parsons

---

[*] Honorable Margaret C. Rodgers, United States District Judge for the Northern District of Florida, sitting by designation.

[1] Although the Morrisons' notice of appeal indicated that they appeal "each and every" order entered by the district court in their case, our review is limited to those orders addressed in the Morrisons' briefs. R13-207.

administered an acid, which had a consistently higher concentration than the acid which should have been used, and Dave received first- and second-degree burns. Dave was treated for his condition over the next few weeks but continued to have problems.

The Morrisons subsequently filed a complaint, alleging medical malpractice and ordinary negligence against Mann, Parsons, and the Clinic, and breach of an implied contract against Mann and the Clinic. In the complaint, the Morrisons requested actual damages and "attorney fees, costs of litigation and punitive damages." R1-1 at 39.

Mann, Parsons, and the Clinic moved for partial summary judgment on the issue of punitive damages. The district court denied the motion as to Mann and the Clinic, but granted it as to Parsons. The district court found that Parsons's culpability "at most, amount[ed] to negligence" and that there was no evidence that her behavior exhibited a conscious indifference to the consequences of her actions or a malicious, wanton, or willful manner. R7-91 at 8.

Mann and the Clinic conceded liability during their opening trial statements and defended only on damages. R17 at 138-39. During the trial, Mann moved for a directed verdict on the implied contract claim and the claim for attorney's fees under O.C.G.A. § 13-6-11. The district court granted the motion, noting that the

3

implied contract claim, if viable, was subsumed into the medical malpractice claim and that the Morrisons had failed to properly plead or allege a claim for attorney's fees under § 13-6-11.  R19 at 950-51, 953.

The jury returned a verdict of $70,000 for the Morrisons.  R21 at 148.  It found that Mann and the Clinic were liable for medical malpractice; that Parsons was liable for ordinary negligence, but not liable for medical malpractice; and that neither Mann nor the Clinic acted with "entire want of care" necessary for punitive damages.  Id.

## II.  DISCUSSION

The Morrisons argue that the awarded damages were inadequate and that the district court erred in deciding numerous evidentiary rulings, granting partial summary judgment to Parsons on their claim for punitive damages, directing a verdict on the breach of contract claim and related attorney's fees, and denying their motions for sanctions.[2]

---

[2]  The Morrisons argue that the district court erred in granting a motion for directed verdict on their motion for attorney's fees under O.C.G.A. § 9-11-68.  Under § 9-11-68, a prevailing party may request, at the time when a verdict is rendered, that the jury determine whether the opposing party presented a frivolous defense.  § 9-11-68(e).  If a frivolous defense is found, attorney's fees may be awarded.  § 9-11-68(e)(2).

The Morrisons's complaint was filed in February 2004.  Section 9-11-68 became effective on 16 February 2005.  Because § 9-11-68 imposes additional duties and obligations upon a party to pay attorney's fees, it is a substantive law which is not to be applied retroactively.  Fowler Prop., Inc. v. Dowland, 646 S.E. 2d 197, 200 (Ga. 2007).  The district court did not err in granting a directed verdict on this issue.

4

A. Jurisdiction

Generally, a prevailing party lacks standing to appeal because a favorable judgment is assumed to have caused that party no harm. Agripost, Inc. v. Miami-Dade County, ex rel Manager and Bd. of County Comm'rs, 195 F.3d 1225, 1230 (11th Cir. 1999) (citing Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper, 445 U.S. 326, 333, 100 S. Ct. 1166, 1171 (1979)). An appeal is not precluded if the prevailing party may be prejudiced by the collateral effect of the judgment or on issues not addressed by that judgment and in which the prevailing party retains a personal stake. Id.; Deposit Guar. Nat'l Bank, 445 U.S. at 333, 336, 100 S. Ct. at 1171, 1173. To preserve a jury finding on damages for appellate review, the trial court must have been given an opportunity to exercise its discretion on a motion for new trial. Electro Servs., Inc. v. Exide Corp., 847 F.2d 1524, 1530 (11th Cir. 1988) (citing Baker v. Dillon, 389 F.2d 57, 58 (5th Cir. 1968)). Absent a motion for new trial, we have no basis for appellate review, as a party may not seek "a new trial for damages for the first time on appeal."[3] Id.; United States E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc., 117 F.3d 1244, 1251 (11th Cir. 1997).

The Morrisons did not file any post-judgment motions to alter or amend the

_____

[3] We will, however, review a damages award if the appellant clearly presented the issue of excessiveness of that award to the trial court, whether or not the "magic words 'new trial'" were used. Carlton v. H.C. Price Co., 640 F.2d 573, 577 (5th Cir. 1981).

judgment, for a new trial, for judgment as a matter of law, or for relief from the judgment or otherwise provide the district court with an opportunity to exercise its discretion regarding the awarded damages. They lack standing to appeal this award, and we DISMISS that portion of their appeal.

B. Evidentiary rulings

The Morrisons maintain that the district court erred by excluding the testimony of their expert, Dr. Gerardo Lionel Sotomayor ("Sotomayor"), and by permitting the testimony of Mann's expert witness, Dr. Carney ("Carney"). Although the Morrisons had initially identified Sotomayor as a fact witness, they subsequently identified him as an expert witness in their response to the motion for partial summary judgment on punitive damages filed by Mann and the Clinic. They argue that their untimely submission of Sotomayor's affidavit, which addressed the standard of care, was necessary to rebut the affidavit of Carney, whom Mann and the Clinic first identified in the summary judgment motion.[4] The district court granted the motion to strike because the Morrisons's justification for their failure to timely identify Sotomayor was without factual support. The district court noted that Carney's affidavit addressed only the issue of actual damages, which was not at issue in the summary judgment motion. R7-91 at 3; R13-194 at

---

[4] The Morrisons had previously identified Howard Rottenberg, M.D., as an expert regarding the standard of care. R1-5 at 7-8, Attachment A at 11.

6

6. The district court also granted Mann's motion to exclude Sotomayor's testimony at trial, finding that the Morrisons failure to timely disclose Sotomayor as an expert was plainly "harmful" and not substantially justified. R13-194 at 10 n.5, 11-13.

During the trial, Carney testified as to the symptoms of a disease, suffered by Dave, which could cause similar problems to those which Dave suffered as a result of his injuries.[5] R20 at 1010-21. After Carney had testified, Morrisons's attorney moved to strike his testimony about the disease and explained that the objection was not raised earlier because he did not want to emphasize the disease before the jury. Id. at 1051-52. The district court denied the motion, noting that Carney's testimony properly addressed the causation of pain. Id. at 1051-52, 1055-56. The Morrisons's subsequently moved for a mistrial, based on Carney's testimony, or for a curative instruction. R12-182. The district court denied the mistrial, but asked for discussion on a curative instruction. R21 at 9. The Morrisons's attorney responded "I think the curative instruction would deal with [our] request . . . that the testimony relating to [Dave] having [the disease] is not a matter for your consideration and . . . that testimony of the expert witness about that should not be considered." Id. Following additional discussion, the parties

---

[5] Dave had testified earlier that he had the disease, and supporting evidence was included in the admitted medical records. R17 at 304; R19 at 813, 818.

7

agreed not to address the disease during their closing arguments. The district court stated that no curative instruction would be given and confirmed that such was agreeable with Morrisons's counsel. Id. at 17-18. Morrisons's counsel responded that "we've done an in-house curative." Id. at 18.

The Morrisons also argue that the district court erred by redacting portions of witness Larry Long's deposition testimony, specifically as to the causation of his similar injuries. The district court permitted Long's testimony to establish that Mann was on notice of the potential for similar injuries but limited his testimony as to the causes of ongoing medical problems because he was "not an expert." R18 at 634, 641, 642-43, 646, 649-50.

We review the district court's evidentiary rulings for abuse of discretion and will reverse only upon a showing of substantial harm. Cox v. Administrator United States Steel & Carnegie, 17 F.3d 1386, 1413 (11th Cir. 1994). Absent a timely objection to evidence, we review for clear error and will reverse only where the challenged evidence presents an obvious and substantial error which seriously effects the judicial proceeding. Christopher v. Cutter Labs., 53 F.3d 1184, 1192 (11th Cir. 1995). Further, a party cannot complain on appeal of an alleged error that they themselves induced or invited. Thunderbird, Ltd. v. First Fed. Savings and Loan Ass'n of Jacksonville, 908 F.2d 787, 794-95 (11th Cir. 1990).

The Morrisons fail to show how they were substantially justified in their untimely disclosure of Sotomayor as an expert witness or how they were substantially harmed by the exclusion of his testimony or by the redactions placed on Long's testimony. The district court did not abuse its discretion in these rulings or in permitting Carney's testimony, especially in light of the Morrisons's counsel's agreement that a curative instruction was not necessary.

C. Partial Summary Judgment for Parsons

The Morrisons argue that partial summary judgment was erroneously granted to Parsons on the punitive damages issues but fail to present any facts or law to support their argument. As the district court reasoned, summary judgment was warranted because there was no evidence to support the claim that Parsons acted in a malicious, wanton, or willful manner.

D. Breach of Contract and Attorney's Fees

The Morrisons argue that the district court erred by preventing them from submitting their claims for breach of contract and associated attorney's fees to the jury, because Mann and the Clinic admitted that they had contracted with Dave to provide competent medical care. See R1-1 at 32; R1-4 at 34. The Morrisons maintain that they were eligible for attorney's fees because Mann and the Clinic acted in bad faith and caused them unnecessary trouble and expense, and contend

9

that they specifically requested the attorney's fees in their prayer for relief.

In Georgia, a plaintiff cannot recover twice for the same injuries, and when suing, for medical malpractice, must choose between a contract or tort claim. Bell v. Sigal, 199 S.E. 2d 355, 356-57 (Ga. App. 1973). In a breach of contract claim, attorney's fees are allowable by a jury if "specially pleaded" and "the defendant has acted in bad faith in making the contract, . . . or caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11. The plaintiff's allegation of bad faith must relate to the acts of the injury and not to the conduct during litigation. Meyer v. Trux Transp., Inc., No. Civ A 105CV-02686-GE, 2006 WL 3246685 *5 (N.D. Ga. Nov. 8, 2006) (citation and quotation omitted).

The district court did not err in granting a directed verdict on the breach of contract claim as there was no basis for this claim separate from that of the medical malpractice claim. That claim is now moot as the jury found liability on the Morrisons's medical malpractice tort claim. The district also did not err in granting a directed verdict on the related attorney's fees, as the Morrisons did not specially plead the attorney's fee statute and did not allege any bad faith or any efforts to cause any unnecessary trouble or expense by Mann or the Clinic.

E. Sanctions

The Morrisons argue that the district court erred in failing to sanction

10

Parson's counsel for initiating *ex parte* communication with the district court and Mann and the Clinic's attorney for inappropriately contacting the Morrisons's expert witnesses.

The Morrisons moved to disqualify or sanction Parsons's counsel, Heather Miller ("Miller"), and noticed her for deposition, arguing that Miller's conduct was consistent with a pattern of inappropriate conduct by counsel for Mann, Parsons, and the Clinic. They complained that, through communications that they had received from Miller, Miller admitted that she had made a telephone call, on behalf of all parties, to the district court deputy clerk to inquire as to filing deadline dates. In an order addressing the motion, the district court commented that it did not view Miller's call as being in contravention of the local rules, as "[l]awyers regularly call courtroom deputies to inquire about various administrative matters." R9-137 at 5. It suggested that the call was unnecessary but served to notify the district court of its oversight in setting deadlines and that the proper method for handling such an inquiry was by motion. Id. at 5-6. The district court did not infer any bad motive on Miller's behalf, but simply a lack of familiarity with the court's practice. Moreover, the district court found that the Morrisons suffered no prejudice as a result of the call because it was immediately disclosed to their attorney and made in furtherance of the same objective sought by the Morrisons. It denied the

11

Morrisons's motion to disqualify Miller and granted Parsons's motion to quash the notice of Miller's deposition, noting that Morrisons's counsel had overstepped and that a deposition would only be permitted to preserve trial testimony, which Miller did not have.

The Morrisons have failed to show any prejudice as a result of the district court's order. The district court did not abuse its discretion in denying the Morrisons's motion to disqualify Miller or for sanctions.

### III.  CONCLUSION

For the reasons stated above, we **DISMISS** the Morrisons's appeal from the jury verdict and **AFFIRM** the district court's orders on the remaining issues.

12