S11A1645. OWENS et al. v. CITY OF GREENVILLE et al.
(722 SE2d 755)

MELTON, Justice.

At the beginning of January 2008, James Bray was sworn into office as Mayor of the City of Greenville following a highly contested election.[1] During the City Council's first meeting of the year, Bray told the members of the Council that he wished to terminate Johnnie Owens, the acting City Clerk, and Darryl Williams, the acting Chief of Police. Bray raised this issue with the Council because, in October 2007, the City passed a resolution stating that "all hiring, firing, raises, and promotions are to be initiated by the mayor, but must be affirmed in regular session of City Council by the majority vote." The Council indicated some concern about the terminations and wished to act slowly and with caution. In January 2008, however, Bray fired Owens and Williams and issued letters of termination to them. Bray then appointed Everline Clay as the City Clerk and Wayne Frazier as Chief of Police.[2] It is undisputed that Bray never presented to the Council the question of whether to appoint Clay or Frazier, and the Council never voted on their appointments or the dismissal of Owens and Williams.

Owens and Williams thereafter sued the City and the Mayor, in both his official and individual capacities, for wrongful termination and concomitant damages. After a hearing, the trial court found that it lacked subject matter jurisdiction over the case because it presented a purely political question. In the alternative, the trial court granted the City's and Bray's motions for summary judgment, finding, among other things, that, despite Bray's actions, the terms of Owens and Williams had naturally expired in accordance with the

---

[1] In *City of Greenville v. Bray*, 284 Ga. 641 (670 SE2d 98) (2008), this Court previously dismissed as moot a challenge to Bray's qualifications to hold office.

[2] It appears from the record that, following the terminations, two members of the City Council resigned from their posts, and, as a result, a receiver was appointed to represent the City's interests in the absence of a City Council quorum. Some time thereafter, the receiver acted to appoint Clay and Frazier to the posts that had been given to them by Bray.

City Charter. Owens and Williams now appeal. Because the trial court had proper jurisdiction over the case, questions of material fact remain, and questions of law remain unreached by the trial court, we reverse.

1. Owens and Williams contend that the trial court erred by determining it did not have jurisdiction over this case because it presents a purely political question. We agree.

> The fact that a controversy has political overtones does not place it beyond judicial review. "The law is equally as well settled that the judiciary is by the Constitution given the power and jurisdiction to adjudicate any and all justiciable questions presented to it in litigation, and that this jurisdiction of the courts is neither ousted nor impaired by the fact that there may be involved in such cases political questions. . . ." *Thompson v. Talmadge*, 201 Ga. 867, 871 (41 SE2d 883) (1947).

*Bowen v. Griffith*, 258 Ga. 162, 163 (1) (366 SE2d 293) (1988). In this case, the trial court was presented with a question of wrongful termination which may be decided by the application of the facts and the reading of the City's governing documents in a straightforward and impartial manner. As a result, this matter does not present a purely political question, and the trial court erred in its determination otherwise. Id.

2. Owens and Williams further contend that the trial court erred by alternatively granting summary judgment to the City and Bray on the basis that their terms of office were strictly annual and had naturally expired prior to their termination. In other words, the trial court found that, irrespective of the propriety of Bray's actions, Owens and Williams would no longer be able to hold their positions in any event and thereby suffered no damage.

There is some basis in the record for the arguments of Bray and the City that Owens and Williams were serving annual terms. For example, the City Charter provides, in pertinent part:

> At all meetings, if present, the mayor shall preside, but shall have no vote upon any question to be decided by the council except in case of a tie, when he shall cast the deciding vote, and also except *in the election of officers annually*, when the mayor and council shall all vote, it being necessary, in order to elect, to have two third majority . . . also, at such time the same mayor and council shall elect, from their body or not, as they deem best, a clerk and treasurer, this office to be filled by one and the same person, and also elect a marshal

and such other officers for said city as they may deem best for the proper government of said city, *it being the intention of this Act to elect all officers, as herein given the mayor and council power to do so, annually.*

(Emphasis supplied.) Therefore, the record would seem to support the trial court's determination that Owens and Williams were serving annual terms. The record does not pinpoint, however, when any such annual terms began or expired. Therefore, contrary to the arguments of Bray and the City, it is unclear whether Owens and Williams were dismissed before or after their terms had naturally expired. Moreover, even if their terms had expired, there is no indication that the trial court took into consideration what rights, if any, Owens and Williams may have had as "holdover officials" in their appointed positions.

Under these circumstances, there appear to be both issues of material fact remaining as well as important questions of law which the trial court has not yet reached. Accordingly, the trial court erred in granting summary judgment to the City and Bray on this point.

3. Owens and Williams contend that the trial court also erred by finding that (a) the City was entitled to sovereign immunity and (b) Bray was entitled to official immunity. Again, we agree.

(a) Under the facts presented by the record now before us, the City was not entitled to sovereign immunity with regard to claims for damages.

Sovereign immunity applies to municipalities, unless the General Assembly waives it by law. Ga. Const. of 1983, Art. IX, Sec. II, Par. IX. Waiver of a municipality's sovereign immunity in tort law is narrow, and only the General Assembly has the authority to enact a law that specifically provides for such a waiver. *CSX Transp. v. City of Garden City*, 277 Ga. 248, 249 (1) (588 SE2d 688) (2003). Any waiver of sovereign immunity " 'is solely a matter of legislative grace. (Cit.)' [Cit.]" Id. at 250. There is no authority for a waiver of sovereign immunity beyond the legislative scheme. Id. And, this Court has consistently held that the purchase of a GIRMA coverage agreement as authorized by OCGA § 36-85-1 et seq., constitutes the purchase of liability insurance for purposes of the waiver of sovereign immunity, and does so to the extent of the liability coverage purchased. See *CSX*, supra at 251 (2) ("the legislature has provided that municipal sovereign immunity may be waived only by the purchase of liability insurance . . . and then only to the extent of the limits of such insurance policy. OCGA §

36-33-1 (a).") (Punctuation and footnote omitted[.]); *Gilbert v. Richardson*, 264 Ga. 744, 751-752 (5) (452 SE2d 476) (1994) ("the county has waived its sovereign immunity to the extent of its liability coverage."); *Hiers v. City of Barwick*, 262 Ga. 129, 132 (3) (414 SE2d 647) (1992), abrogation on other grounds recognized by *City of Thomaston v. Bridges*, 264 Ga. 4 (439 SE2d 906) (1994) ("sovereign immunity is waived in this case to the extent of available insurance. . . .").

(Emphasis omitted.) *Godfrey v. Ga. Interlocal Risk Mgmt. Agency*, 290 Ga. 211, 214 (719 SE2d 412) (2011).

Therefore, to determine whether the City was entitled to sovereign immunity from claims for damages in this case, we must analyze the City's "Public Officials Errors and Omissions" insurance policy. This policy provides: "We will pay those sums that the insured becomes legally obligated to pay as monetary damages arising out of a 'wrongful act,'[3] or an 'employment practices' offense, or an offense in the 'administration' of your 'employee benefit plans,' to which this insurance applies." The policy thereafter defines an employment practices offense, in relevant part, as "an actual or alleged improper employment related practice, policy, act or omission involving an actual, prospective, or former volunteer or employee, including . . . [w]rongful dismissal, discharge, or termination of employment or membership, whether actual or constructive." Based on this definition, it appears that the policy does, in fact, cover the wrongful termination claims brought by Owens and Williams. Therefore, consistent with OCGA § 36-33-1 (a), the City must be deemed to have waived sovereign immunity to the extent of the limits of the City's insurance policy covering these claims.

(b) The trial court also erred in its finding that Bray was entitled to official immunity.

> The doctrine of official immunity, developed primarily in Georgia through case law, provides that while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority. See *Hennessy v. Webb*, 245 Ga. at 331; OCGA § 36-33-4; Sentell, Individual Liability in

---

[3] The policy states: " 'Wrongful act' means any actual or alleged error, act, omission, neglect, misfeasance, nonfeasance, or breach of duty, including violation of any civil rights law, by any insured in discharge of their duties individually or collectively that results directly but unexpectedly and unintentionally in damages to others."

Georgia Local Government Law: The Haunting Hiatus of Hennessy, 40 Mercer L. Rev. 27 (1988).

*Gilbert v. Richardson,* supra, 264 Ga. at 752 (6). Statutory law provides, however: "Members of the council and other officers of a municipal corporation shall be personally liable to one who sustains special damages as the result of any official act of such officers if done oppressively, maliciously, corruptly, or without authority of law." OCGA § 36-33-4.

In this case, Owens and Williams have maintained throughout that Bray unilaterally terminated them from their position without authority of law because the City passed a 2007 resolution requiring that the mayor get City Council approval prior to any such termination. At the very least, a question of fact remains whether Bray acted "without authority of law" by failing to comply with this directive. As such, he was not entitled to summary judgment on this point pursuant to official immunity. OCGA § 36-33-4.

4. Finally, Owens and Williams maintain that the trial court erred in its determination that they did not give the City sufficient ante litem notice of their claims. Again, we agree. OCGA § 36-33-5 provides:

> No person, firm, or corporation having a claim for money damages against any municipal corporation on account of injuries to person or property shall bring any action against the municipal corporation for such injuries, without first giving notice. . . . Within six months of the happening of the event upon which a claim against a municipal corporation is predicated, the person, firm, or corporation having the claim shall present the claim in writing to the governing authority of the municipality for adjustment. . . . No action shall be entertained by the courts against the municipal corporation until the cause of action therein has first been presented to the governing authority for adjustment. . . . Upon the presentation of such claim, the governing authority shall consider and act upon the claim within 30 days from the presentation. . . .

The question in this case is whether the ante litem notice provided by Owens and Williams was sufficient to put the City on notice of their wrongful termination claims. In deciding this issue,

> [t]here is no precise standard for determining whether any given ante-litem notice is substantively sufficient, since substantial compliance with the statute is all that is re-

quired. *City of Arlington v. Smith*, 238 Ga. 50 (2) (230 SE2d 863) (1976). The information supplied will be deemed sufficient if it puts a municipality on notice of the "general character of the complaint, and, in a general way, of the time, place, and extent of the injury. The act recognizes, by the use of the words 'as near[ly] as practicable,' that absolute exactness need not be had." *Langley v. City Council of Augusta*, 118 Ga. 590, 600-601 (11) (45 SE 486) (1903).

*Atlanta Taxicab Co. Owners Assn. v. City of Atlanta*, 281 Ga. 342, 352 (5) (638 SE2d 307) (2006).

In this case, a letter sent to Bray by the acting attorney for Owens and Williams stated:

> I have reviewed the circumstances surrounding the terminations. Neither employee has been provided their appeal, nor have their terminations been approved by City Council. *These terminations are unlawful.* They were not done in accordance with the City rules and regulations governing same. Both employees should be placed back on the City payroll in an administrative leave with pay status so that benefits and salary continue until their cases are heard under the City's personnel policies. . . . I am available to meet with you and your counsel at your first opportunity and look forward to working with you towards an amicable resolution of *these claims*.

(Emphasis supplied.) This letter sufficed to place the City on notice of the general character of the complaint, namely the wrongful terminations, and, in a general way, of the time, place, and extent of the injury. Therefore, Owens and Williams substantially complied with ante litem notice requirements, and the trial court erred by granting summary judgment to the City on this count.

*Judgment reversed. All the Justices concur.*

DECIDED FEBRUARY 27, 2012.

*Parks, Chesin & Walbert, Allan L. Parks, Jr., James E. Radford, Jr.*, for appellants.

*Sumner Meeker, Theodore P. Meeker III, E. Alan Miller*, for appellees.